Good afternoon. My name is Pamela Rubio with the Office of the State Appellate Defender. I represent Caleb Charleston and I anticipate using about 8 to 10 minutes for opening argument and just a few minutes for rebuttal. I'm Assistant State's Attorney Marcy Jacobs representing the people of the state of Illinois and 10 minutes should be fine for me as well. Very well. Now remember the microphone in front of you is for recording purposes only. It's not granted for amplification so all your friends and relatives out there want to hear you and keep your voice up please. Ms. Rubio? Yes, thank you. May I please report? Because Issue 2 would be controlled by the recent Illinois Supreme Court case People v. Harris if it becomes final, today's argument will focus on Issue 1 which is that the trial judge abused his discretion in imposing an excessive sentence of 60 years in prison after improperly considering factors in mitigation and refusing, I'm sorry, improperly considering factors in aggravation and refusing to file a criminal complaint. And refusing to consider factors in mitigation demonstrated by Caleb's rehabilitative potential. Caleb was originally sentenced to 75 years in prison in this case and this court remanded with instructions for the trial judge to reconsider his sentence without considering improperly admitted evidence of hearsay evidence of motive. This court also directed the trial judge to consider Caleb's youthfulness and youthful characteristics as it relates to his potential for rehabilitation. This court noted that even without considering the, even with considering the motive evidence, Caleb's sentence of 75 years might be excessive because he was only 18 at the time of the crime, he had no violent criminal history and in fact little criminal history at all, and had meaning family support. Now that order, that order I think, that said that the trial court could consider the hearsay evidence to the extent, I forget the exact language, but to the extent that it, to the extent that it was proper. And, but the trial court resentencing did not consider, right? I just want to be clear that we're. Well the trial judge mentioned it several times and part of our argument is that he actually used the fact that Caleb had won a remand sort of against Caleb because the judge took a sarcastic tone as it related to this court's remand and directive not to consider that evidence or suggestion to reweigh that, the importance of that evidence as it related to Caleb's sentence. So although he stated on the record that he would not consider it, his comments clearly show that he was displeased with this court's order and that those facts were very much on his mind when he sentenced Caleb to 60 years. And he actually used it sort of against Caleb in that he said, well, if I can't use that evidence, what else do we have here? We have, you know, the facts of the case and then kind of used that to support a finding that Caleb had zero rehabilitative potential. But given that the standard here is an abuse of discretion and the trial court actually sentenced him to 60 years, which is far less than the maximum upon which the trial court could have sentenced him, how do we get to an abuse of discretion? Well, it was an abuse of discretion in this case. We're not asking this court to reweigh the evidence in sentencing. We're asking this court to find that the trial judge improperly used the aggravating factors and mitigating factors. And because of that error, that resulted in an excessive sentence of 60 years. So 60 years at 100% still leaves this client in prison until the age of 78, if he even lives that long. And in light of the lengthy sentence that was imposed, the fact that the trial judge did not properly consider Caleb's youthfulness and then also considered against him, in a way, this court's remand, as well as Caleb's protestations of innocence, the whole picture shows that the trial judge didn't reach the decision that he had to make. He didn't reach the decision of imposing a 60-year sentence correctly. On remand, the judge was actually presented with evidence that Caleb had rehabilitative, not only had potential for rehabilitation, but was actually undergoing rehabilitation during the seven years that passed from the time he was sentenced in this case until, originally, until when he reappeared before the judge. He had not picked up any infractions in prison. He was trying to obtain his GED, although he wasn't able to because his sentence was so lengthy. He expressed a continued attempt to have a relationship with his family, including his six-year-old daughter, whom he never met, and his younger brother. So these facts that were not disputed at the sentencing hearing showed that as he was aging out of his teenage years, Caleb was becoming a more mature young adult as he reached his mid-twenties. And the judge never considered that fact. He used Caleb's youth at the time of this offense actually against him improperly. Dismissed his youthfulness. Anytime he mentioned Caleb's youthfulness, he used it in a negative way against Caleb to say, well, it's a damning statement that you would have so many prior criminal convictions at the age of 18. And then, again, reiterated Caleb's reckless or immature behavior in high school, including fighting and being expelled from school. Things that all related to Caleb's youthful impulsivity rather than evidence that suggested that he was one of those rare types of youth that had no chance of rehabilitation. The judge also, as I stated earlier, used against Caleb the fact that he was protesting his innocence in allocution. Caleb presented a lengthy statement in allocution reiterating... Is there something wrong with that? If somebody doesn't acknowledge their guilt, is that not a factor to be considered? A lack of remorse or a refusal to admit responsibility can be used in aggravation in certain circumstances, but the Illinois Supreme Court has said that that must be done on a limited case-by-case basis as it relates to evidence of someone's rehabilitative potential. And here, the judge used the defendant's statement protesting his innocence against him as a refusal to admit guilt, which is a little bit different than a person's lack of remorse. Here, Caleb expressed remorse for his family... Here, it appears that the defendant does not acknowledge his responsibility for the crime. He's entitled to do that, but a judge is also entitled to consider that refusal in light of all the facts of the case. But there's no... His failure to admit his guilt... It's not an admission of guilt. It's an acknowledgement of responsibility. He's saying, I'm going to prove my innocence, basically. Can't the judge not accept that? He's saying, well, you're not showing acceptance of what you did. Well, I think in this case, it's a little bit different than in some of the other cases where a lack of taking responsibility can be used as an aggravating factor. In the most recent case we have is from the Illinois Supreme Court from 1986, I believe, and in that case, the court stated, yes, you can use that lack of acknowledgement of responsibility against the defendant, but in that case, the defendant had testified at trial. And then at sentencing, the only thing he stated in allocution was that, you know, he didn't do it. He was complaining about his counsel's performance, and the trial judge's statements in that case, people versus word, were relating to the defendant's refusal to admit guilt as it reflected on his being a liar and not being somebody that could potentially be rehabilitated. And that's the difference, and in this case, we have other evidence that the judge refused to consider or did not consider in finding that suggested that Caleb did have potential for rehabilitation, and then coupled with the judge's statement, you know, that the thing missing from Caleb's statement in allocution is, quote, unquote, I'm sorry I did it. So he's not, Caleb didn't testify at trial. The judge wasn't making a commentary on Caleb's truthfulness. I believe he was holding it against Caleb that he was professing his innocence, and I think that's the difference between this case and people versus word. And the defendant's criminal history doesn't support the judge's conclusion either. So to me, your argument is really, was a pre-Harris argument covering the base that in the event the Illinois Supreme Court found that an 18-year-old should be considered as a juvenile for sentencing purposes, where they came down and said no, juvenile is under 17, and that's it. An 18-year-old is an adult, right? So your argument now to me is that because he's simply 18, he should get more consideration because of his young age than a 24-year-old who commits the same offense. I wouldn't read Harris as precluding an as-applied challenge to a de facto natural life sentence of an 18-year-old or someone over the age of 17. The conclusion in Harris as it related to that defendant's as-applied challenge was that there was insufficient evidence on appeal to reach the merits of that claim. And the Illinois Supreme Court said he's not precluded from raising that issue. He can file a post-conviction petition attaching any kind of evidentiary support he has that reflects that those mirror factors apply to him. If he's making a direct appeal, an as-applied challenge to his excessive sentence, and that's as applied to an 18-year-old, explain to me how he gets to, let's assume he's not successful, but he gets to an 18-year-old. How would he then be able in a post-conviction petition to re-litigate that same constitutional issue premised on the fact that he was 18 years old at the time of the offense? Wouldn't that be res judicata? Well, I would argue that if the, as issue, relating to issue one, this court can still consider Caleb's excessive sentencing argument irrespective of Harris because his youthfulness is always a factor regardless of whether the mirror factors apply. As it relates to issue two, if Harris becomes final, we can see that that would mean that this court would have to find that this record, as it exists right now, does not have enough information in it to properly raise. So I would argue that if the, as issue, relating to issue two, this court can still consider Caleb's excessive sentencing argument irrespective of Harris because his youthfulness is always a factor regardless of whether the mirror factors apply. So what my issue is, is for you to really get to the heart of this is how do we get to an abuse of discretion? Well, the abuse of discretion was the improper usage of his youthfulness against him when there was no evidence in the record to support that he had zero rehabilitative potential. The way I read the record is, my guess is the judge knocked off the 15 years solely based on the inability, or his own perceived inability, not to consider the here's the motive evidence. And so the 16 years really related to... What did the judge say that would lead you to that belief, that that was the only reason for the reduction? Well, I mean, the judge rejected any of the arguments that Caleb had any rehabilitative potential. He concluded that he had an utter exclusion of concern for innocent people, went on to regurgitate his prior criminal history, which really didn't support the conclusion that he had a lack of respect for strangers. And at the end, he said, of course, they have no problem with the previous sentence I gave you. But if I take and I ignore the fact of the hearsay evidence of motive, if I completely ignore that, which I repeat, I guess that's what they want me to do, I will re-sentence you to 60 years. So I would contend that the 15-year reduction related to that factor, which kind of leads to the conclusion that the 60 years is the term of years that relates to the rest of the factors involved in the aggravation and mitigation. And then when we look at the factors in aggravation and mitigation that the judge used in reaching that 60-year term conclusion, our contention is he did not properly weigh those factors. He looked at Caleb's youth as an aggravating factor. He didn't address the fact that the type of conduct that he was reaching far back into Caleb's teen years to use against him were products of his immaturity that he could age out of, which he demonstrated that he actually was aging out of. He was becoming an articulate and capable 20-year-old, 25-year-old in prison by the time he was re-sentenced. So those factors are the reason why that 60-year sentence as it concluded was really based on improper weighing of the aggravation and mitigation in this case. Didn't the court look at the offense itself when he said it was as cold-blooded a killing as I've ever seen in this courtroom? He did. And his comments were related to his displeasure with what he perceived not being able to consider the hearsay evidence. Because he said, okay, well, if they want me to ignore this evidence, what am I left with? A cold-blooded killing. And so in a way, it supports our argument that the judge really was unhappy, critical, and really just had a negative feel for Caleb because he had run a remand for re-sentencing and then presented a statement in allocution that the judge didn't like. But with respect to the hearsay, I found the line here, the trial judge should consider William's statement, that's the hearsay statement, for what it is and determine what weight to give it, if any. And he said he gave it none. That's what it said. It didn't say don't consider it. Right, right. Yes, I agree. And he stated on the record that he would not consider it, and that's why he reduced it by 15. But as the 60-year sentence stands, that still leaves Caleb in prison until the age of 78. And starting as an 18-year-old, you know, it was the judge's duty to consider all the aggravating and mitigating factors, including his youthfulness and his rehabilitative potential, which he did not acknowledge on the record in reaching a more appropriate sentence. And for those reasons, we ask this court to reduce Caleb's sentence to a term closer to the minimum sentence of 35 years, or alternatively, remand for re-sentencing before a different judge and in light of People v. Harris with directions for the parties below to address People v. Harris and the factors presented there. Thank you. Thank you. Ms. Jacobs? Thank you. May it please the Court? When defendant argues that the trial court didn't give proper consideration to youth and good behavior in prison or didn't adequately consider other mitigation evidence, did not properly weigh the factors, you made no mistake. He was doing nothing more than asking this court to re-weigh those factors, which he well knows it cannot do. And this is true even if this court were to weigh the factors differently. And this is all in the context of plain error. So not only does the defendant have to show any abuse of discretion, any alleged abuse of discretion would be erroneous, he would have to show it would be clearly and obviously erroneous. And here the record establishes there was no error at all, where the trial court appropriately considered all of the mitigating and aggravating factors, and including the Miller factors, which we now know due to Harris he didn't necessarily even need to do. And while the defendant talked about all the mitigation in this case, he was young, all of this stuff, and talked about his potential for rehabilitation, the law is clear that his potential for rehabilitation need not be given greater weight than the seriousness of the offense. And in fact, our courts have found that the seriousness of the offense is the most important factor. And that's what the trial court found here. That is what he said. And he was well within his exercise of discretion to do so based on the record. Because the crime here was premeditated, where a defendant along with co-defendant obtained a stolen car and a semi-automatic pistol in order to carry it out. It was very brazen. In broad daylight, driving around in his own neighborhood, the crime was committed under his mother's window. And it was very cold-blooded, as the trial judge did note after he said, I forget the motive evidence, I am just now looking at the crime itself of driving around the block, shooting five bullets into Patrick Stigling, and then deciding, oh, well, we better go back and make sure he's really dead. And shooting nine more bullets into him. And all this while he was on probation for possession of a stolen motor vehicle, along with his other criminal history. And all this as the judge heard his failure after seven years in becoming a 25-year-old man to take any responsibility for this crime at all. And as the trial court duly considered the Miller-Holtman factors, defendants claims that he did not consider his youth is just belied by the record. Not to mention the fact that he mentioned his youth seven times. He was well aware of his youth. But as you alluded to, Your Honor, that these aren't the, it's not the bare-boned fact of the number of his age, 18, that is to be considered. It is the stuff that goes along with it. The attendant circumstances, such as impetuosity, failure to appreciate risks and consequences. And is there any familiar pressure or peer pressure? And those things were not, did not, the judge considered those things. In addition to the fact that he considered his age. And they weren't present in this case. This was not an impetuous crime. This was preplanned. And the defendant did appreciate the risks and consequences of his crime when he went and set the work car, as the judge called it, on fire after the crime. So to uproot the evidence. And as well as the fact that he, and the defendant says that the judge didn't give an adequate consideration to his potential for rehabilitation. However, the judge simply knew that it was able to not have to give more weight to that. And decided, and considering the seriousness of the offense, determined that this was the appropriate sentence within the legislature. What the legislature determined was the appropriate range, due to policy considerations, this is an appropriate range for an adult defendant to be sentenced to. And I talked in my brief about the case of People v. Horta, which is almost an identical factual situation where an 18-year-old was sentenced to a 59-year sentence. Based out of the same sentence and range. He was also accountable, not the shooter in that case. But his actions in that case were very important in carrying out the crime. And of course, defendant's actions in this case, the crime could not have happened without defendant's actions. They were so important. Both crimes were premeditated and brutal. And the court in that case also found that his allocation of remorse was more denial than remorse. And that defendant also had a slight criminal history, relatively speaking. And that trial court also considered that defendant's use in attendant circumstances. And there was no abuse of discretion found there. So with regards to defendant's claims that the judge considered two improper bases. The first one being that it was displeased by, allegedly displeased by this court's mandate. First of all, I think that it's clear that the trial court did misunderstand the mandate. Where the mandate did not say he could not consider the motive evidence. The mandate instructed that he should determine if it was single hearsay or double hearsay. And then give it the appropriate weight. But the trial court, I believe, misunderstood that and decided not to give it any weight. So this actually worked in the defendant's favor. He gave it no weight. He reduced the sentence, specifically saying, I'm giving it no weight, so I'm reducing the sentence. Certainly, the defendant was not prejudiced by this. There's literally no evidence on the record showing that the judge was, any displeasure he had with the court's mandate, that he actually took it out on defendant. It was the exact opposite. And also, trial courts are presumed impartial, as this court well knows. And even if he made some sort of mistake, it doesn't establish a personal bias against the defendant. With regards to defendant's claim that the trial court inappropriately considered his claim of innocence, I got confused listening. There's distinctions attempted to be made between a claim of innocence and a protestation of innocence and a lack of taking responsibility. There is no such distinction, according to the Illinois Supreme Court, under People v. Ward. A claim of innocence is proper and relevant consideration in sentencing. It goes to defendant's character. It goes to his prospects of rehabilitation. It shows that if he had a willingness to lie under oath, he may still be continued war with society. It goes to the likelihood of whether he would transgress again. It goes to the likelihood of whether he would respond to rehabilitative efforts if there's serious doubt that he would be willing to work on and rehabilitate any character deficiencies that may have led to his criminal agency. All of these things were said by the Illinois Supreme Court, have been reaffirmed time and time again. And the cases that defendants cited on this point are old and have been basically overruled by Will. So it really makes no sense. That was a proper consideration. The judge did nothing wrong there. So what we have here is a court exercising its discretion in sentencing an adult defendant to a long term of years within the statutory range that the legislature determined was appropriate as a matter of public policy. There was no error at all. So there was no player. And as such, this court should affirm defendant's sentence. Thank you. Ms. Rubio, briefly. I just want to address a few points. As it relates to Caleb's argument relating to his protestation of innocence, I wanted to clarify what my position is on this. According to People v. Ward, the Illinois Supreme Court said, in some instances and under certain factual circumstances, a continued protestation of innocence and a lack of remorse may convey a strong message to the judge that the defendant is an unmitigated liar and at continued war with society. But they also warned that that consideration must not be automatically and arbitrarily applied as an aggravating factor. And so our argument is that there are certain circumstances that that fact can be used against a defendant if it shows, if it demonstrates and supports the conclusion that he's an unmitigated liar and at continued war with society, in considering all of the other information the court has about the defendant. That's according to Ward. So our argument is that that is not the case here. We have nothing else in this record to support that Caleb is an unmitigated liar, that he's at war with society, that he has continued to assert his innocence and did so in his statement in the allocution, should not have been automatically applied as an aggravating factor in this case, as the judge did. Secondly, as it relates to the state's argument that the seriousness of the offense is the most important aggravating factor, it's one of many factors. And the state's comparison of this case to the case of Peeper v. Spurda is really not appropriate. In Peeper v. Spurda, that 18-year-old got one less year than Caleb did. He got 59 years. Caleb got 60. And in that case, we're talking about a brutal torture. We're talking about burning the victim's legs and genitalia with a blowtorch premeditation. This is not the type of case that can be compared to the facts of this case. Not that we are depreciating the seriousness of the offense, but this certainly is not the kind of fact pattern that is seen in Peeper v. Spurda. And then finally, while 60 years, within the term of years that the legislature has deemed appropriate for a crime like this, 35 years is also within that range. And so we're asking for something in between the number of 35 and 60, which the legislature has deemed to likewise be appropriate. Thank you. Thank you both for your arguments in this matter. We'll take the matter under advisement. Thank you.